John MORTON, Plaintiff,

v.

BERMAN ENTERPRISES,
INC., Defendant.

No. 78 C 854.

United States District Court,
E. D. New York.

Feb. 27, 1981.

Steven Thaler, New York City, for plaintiff.

Walker & Corsa, New York City (John F. X. McKiernan, New York City, of counsel), for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

In this case the jury returned a verdict against defendant shipowner for $664 as maintenance and cure and $110,600 as damages. Defendant has moved under Rule 50(b) of the Federal Rules of Civil Procedure for judgment notwithstanding the verdict or in the alternative under Rule 59 for a new trial.

Responding to special interrogatories the jury found that defendant was not negligent, that the ship was unseaworthy causing injury to plaintiff, and that plaintiff was not himself negligent.

Plaintiff, a tankerman on defendant's oil tanker, testified that on September 21, 1977 he had his hands under a thirty foot oil hose of some six hundred to one thousand pounds and was maneuvering it in an effort to furnish sufficient slack to enable the men on a dock to fit the hose's flange to a manifold. The hose was suspended at three places by slings hanging from hooks, each attached to a block and fall attached in turn to a boom. The hooks were open, were not spring loaded, and had no mousing. Plaintiff testified that as he was handling the hose it came down at the middle suspension point, carrying him to the deck and causing his injuries.

Defendant makes several contentions. It urges that plaintiff's testimony was demonstrably false because physically impossible. The argument is that no matter how the hose was handled its weight would have maintained the eye of the sling in the open hook, which was intact after the alleged occurrence. But the jury was free to believe plaintiff and to infer that the motion of the hose caused the eye of the sling to come off the hook.

Defendant also asserts that there was no proof of unseaworthiness because in ten years on defendant's vessels no similar slings had come off open hooks. Even if it be assumed that the jury so found, it does not follow that the vessel was seaworthy as a matter of law.

The test is whether the vessel and its equipment are "reasonably fit" for the purpose to which they are to be put. *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297 (1963). The fact that defendant had not experienced a similar occurrence in the past is not conclusive. Even the general prac- tice is not the measure. Indeed, "there are precautions so imperative that even their universal disregard will not excuse their omission." *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932), *cert. denied sub nom. Eastern Transp. Co. v. Northern Barge Corp.*, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932).

A rational assessment of whether the open hooks were reasonably fit would take into account a variety of considerations, including the likelihood and seriousness of the risk, the availability and cost of safer equipment, and the inconvenience, if any, of using it.

According to the testimony, spring loaded hooks, costing no more than five or six dollars, and hooks with mousing were in widespread use. Either type would have retained the sling in place. Defendant does not claim that such hooks would have posed operating problems or that the slings were required to be removed from the hooks at frequent intervals. In fact, the evidence was that the slings were more or less per- manently suspended on the hooks.

The chance of a sling coming off an open hook may not have been great given the weight of the hose. But such an eventuali- ty was by no means impossible, and the seriousness of the injury likely to be inflict- ed in the event of a fall is obvious.

Taking into account all these factors and assuming evidentiary facts most favorable to plaintiff, the court cannot deem the open hooks seaworthy as a matter of law.

*Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223 (2d Cir.), *cert. denied*, 375 U.S. 835, 84 S.Ct. 52, 11 L.Ed.2d 65 (1963), on which defendant relies, has no bearing on the is- sue. There the plaintiff, in an effort to extricate metal lodged in a chute and block- ing the free flow of scrap, took a large piece of iron fashioned at each end into a round shape or hook, fastened it on the metal, and pulled. As he did so, his feet slid, the hook slipped off, and he fell.

The Court of Appeals held that there was no proof of unseaworthiness because there was no showing that the improvised instru- ment belonged to the ship, and, even if it did, there was no evidence that it was de- fective, improperly designed, or otherwise unfitted for its intended use. At most plaintiff proved it slipped while he was using it.

The decision is hardly persuasive authori- ty here where plaintiff contends, among other things, that the hooks were improper- ly designed and unfitted for their intended purpose.

In the present case the decision as to whether the vessel or its equipment was "reasonably fit" was for the jury. *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 729, 87 S.Ct. 1410, 1413, 18 L.Ed.2d 482 (1967); *Mascola v. Pacific Coast Transport Co.*, 421 F.2d 1281, 1283 (2d Cir. 1970). It is true that to allow the jurors not only to find what occurred but also to apply to their findings a criterion so general as "rea- sonable fitness" is to invite them to consult their own standards. Thus some have ar- gued that a determination of what is rea- sonable is one of law and should be made by the courts, at least in clear cases. *Balti- more & O. R. Co. v. Goodman*, 275 U.S. 66, 70, 48 S.Ct. 24, 25, 72 L.Ed. 167 (1927) (Holmes, J.).

But we need not return to the ancient controversy as to whether the application of legal criteria to established facts is a ques- tion of "law" or "fact". *In re Hygrade Envelope Corp.*, 366 F.2d 584, 588 (2d Cir. 1966). The law has generally been cautious in framing standards of reasonableness that amount to rules of law. *Pokora v. Wabash Ry. Co.*, 292 U.S. 98, 101, 54 S.Ct. 580, 581, 78 L.Ed. 1149 (1934). The experiences of people differ, and ideas of what is reasona- ble depend so much on the precise facts and are so variable and subject to change with the passage of time that it has been

thought wiser and safer to leave the matter to the jurors as members of the community rather than to a judge. *Railroad Company v. Stout*, 84 U.S. (17 Wall) 657, 663–64, 21 L.Ed. 745 (1873); *Grand Trunk Ry. Co. v. Ives*, 144 U.S. 408, 417, 12 S.Ct. 679, 682–83, 36 L.Ed. 485 (1892); *Pease v. Sinclair Ref. Co.*, 104 F.2d 183, 187 (2d Cir. 1939). Here, for the reasons stated, the jury could properly conclude that the hooks were unseaworthy.

Defendant objects to the court's decision not to expand its instructions on unseaworthiness. The court's charge on the point was as follows:

"... a shipowner owes the seamen aboard a vessel in navigation a duty to provide a 'seaworthy' ship, and this means that the ship and its machinery and appliances must be reasonably fit to permit a seaman to do his work with reasonable safety.... Plaintiff contends that the supports for the fuel hose were unsafe or improperly designed or constructed, or that they were unfit for the use to which they were put. In particular plaintiff contends that the hooks supporting the slings which in turn supported the hose were unsafe and unfit."

The court declined to add the following requests by defendant:

10. In order to be seaworthy, a vessel must simply be reasonably fit for her intended purpose. Absolute perfection is not required.

11. The warranty of seaworthiness does not require that a seaman be furnished an accident-proof ship, nor does it make the shipowner an insurer of the seaman's safety.

12. To satisfy the warranty of seaworthiness, a shipowner is not required to furnish the best possible ship, gear, or equipment but must simply furnish a ship, gear and equipment which is reasonably fit and suitable for its intended purpose.

In urging that the court should have amplified the instructions, defendant points to the following language in *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960), a case in which a seaman slipped on a rail covered with slime and fish gurry: "What has been said [about the absolute duty to furnish a seaworthy ship] is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service."

The instructions given by the court fairly state the law. There was no danger that the jury would construe "reasonably" fit to mean "absolutely" fit or "accident proof". Nothing in the *Mitchell* case suggests that under the circumstances of this case the court was obliged to say that "reasonable" did not mean "perfect". Indeed, a simple addition to the charge of defendant's requests might have misled the jury into supposing that as a matter of law an open hook was wholly appropriate. But the jury was free to determine that in the circumstances a hook that could not slip off was the only hook reasonably fit.

If the court had granted defendant's requests, to prevent a misconception the court would also have had to point out other considerations bearing on the reasonableness of using open hooks. For the court to discuss evidentiary details (such as the miniscule cost of spring loaded hooks) seems unwise. There is a risk of omitting matters which jurors may properly take into account. Furthermore, as noted above, to reach a "reasonable" result the law seeks to draw on the joint experience of the jurors rather than the views of a single judge. By emphasizing only factors which it deems important the court may trench upon the function of the jurors.

Finally, defendant urges that the jury's findings as to unseaworthiness and lack of negligence are inconsistent and that the defendant should have a new trial. Of course, where the jury's answers can be

reconciled they should be. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962).

As the opinion in the *Mitchell* case, *supra*, stated, the decisions of the Supreme Court have evolved "a complete divorcement of unseaworthiness liability from concepts of negligence." 362 U.S. at 550, 80 S.Ct. at 933. In the present case the jury was instructed, without objection by defendant, that in order to succeed on the unseaworthiness claim "plaintiff need not prove that defendant was negligent." The jurors thus could have concluded that different criteria applied to each claim and that an unseaworthy condition existed although they could not affix blame on any of the ship's personnel.

Moreover, *Waldron v. Moore-McCormack Lines, Inc., supra*, appears to hold that a jury verdict of unseaworthiness may stand even though logically inconsistent with a jury's finding of no negligence. In that case the mate had ordered the plaintiff and another seaman to uncoil a rope, and there was testimony that more men should have been assigned to the job. The trial court dismissed the unseaworthiness claim but left the negligence claim to the jury, which found for the defendant. The Supreme Court reversed the dismissal of the unseaworthiness claim and held it should have been submitted to the jury. The court did not explain how a jury could have found both that the vessel was unseaworthy for failing to assign sufficient men to the task and that the vessel's personnel were not negligent. The court was content to place its decision on the principle of "complete divorcement of unseaworthiness liability from concepts of negligence." 386 U.S. at 726, 87 S.Ct. at 1411.

*Bernadini v. Rederi A/B Saturnus*, 512 F.2d 660 (2d Cir. 1975), which defendant cites, is not inconsistent. There the jury found negligence but no unseaworthiness. The case was "exceptional," as the opinion described it, and the charge of the trial judge recognized that a finding that the condition of the deck was unseaworthy, because slippery from oil or grease and blocked with tripping hazards, was a precondition to a finding of defendant's negligence in failing to provide plaintiff with a safe place to walk.

The Court of Appeals said that "the very statement of the breach of duty constituting negligence indicates that it would be a breach of duty for failure to correct or to warn of a *condition*, the condition being a slippery deck" and that "[t]his is a classic illustration of unseaworthiness, independent of negligence." 512 F.2d at 664 (emphasis in original). The court concluded that "there must be a limit" to the effort to reconcile special verdicts where they are "quite irreconcilable, the plaintiff's case is tenuous, and the suspicion strong that the judgment was predicated upon confusion or sympathy or both." *Id.*

In the present case the jury found an unseaworthy condition, the special verdicts are reconcilable given the court's charge, the plaintiff's case was far from tenuous, and the court does not suspect that the jury's conclusions were based on improper considerations.

Defendant's other arguments have been considered and are rejected.

The motion is denied. So ordered.